**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| STS SOFTWARE SYSTEMS, | : | |
| LTD., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:04-CV-2111-RWS |
| v. | : | |
| | : | |
| WITNESS SYSTEMS, INC., | : | |
| | : | |
| Defendant. | : | |

## ORDER

Now before the Court are Plaintiff's Motion to Dismiss All Claims

Relating to the '665 Patent for Lack of Subject Matter Jurisdiction [105];

Plaintiff's Motion for Protective Order [135]; Plaintiff's Motion for Contempt

of the Court's Order of September 26, 2005 and for Sanctions [138];

Defendant's Motion for Modification of Patent LR Schedule [147]; Plaintiff's

Motion for Leave to file Surreply Declarations [180]; and Defendant's Motion to

Compel [148].  After considering the entire record, the Court enters the

following Order.

**I.  Plaintiff's Motion to Dismiss all Claims Related to the '665 Patent**

STS Software Systems, Ltd. ("STS") is the assignee of all interest in

U.S. Patent No. 6,122,665 ("the '665 patent").  On July 20, 2004, Witness

Systems filed a complaint in the Northern District of Georgia seeking a

declaratory judgment that it does not infringe any valid claim of the '665 patent.

On the same day, STS filed a complaint in the Southern District of New York

alleging infringement of the '665 patent.  Witness Systems later counterclaimed

in that suit seeking declaratory judgments of non-infringement and invalidity.

The New York action was subsequently transferred to this District and, by Orders

of this Court entered January 14, 2005 [46] and February 9, 2005 [49]

respectively, the two cases were consolidated under the caption <u>STS Software</u>

<u>Systems, Ltd. v. Witness Systems, Inc.</u>, No. 1:04-CV-2111-RWS.

After the cases were consolidated, three additional patents were issued

and assigned to STS.  These patents, U.S. Patent Nos. 6,865,604 ("the '604

patent"), 6,880,004 ("the '004 patent"), and 6,871,229 ("the '229 patent"), are

directly related to the application which issued as the '665 patent.  STS sought,

2

and was granted, leave to file a supplemental complaint which Witness Systems did not oppose.  On July 7, 2005, STS filed its supplemental complaint asserting claims for infringement of these three additional patents; Witness Systems has counterclaimed seeking declarations of non-infringement and invalidity as to these patents as well.

On August 22, 2005, STS filed the instant motion seeking the dismissal of all claims related to the '665 patent on the grounds that a covenant not to sue executed by STS has divested this Court of jurisdiction.  Witness Systems vigorously contended that, with respect to the '665 patent, a justiciable case or controversy remained, and that as such, the Court retained jurisdiction over its declaratory judgment claims.  On November 9, 2005, after the issue had been fully briefed, STS filed a supplemental covenant not to sue which replaced the original covenant upon which the Motion to Dismiss had been based.  The supplemental covenant provides:

> Plaintiff STS Software Systems, Ltd. ("STS"), for itself, its parents, subsidiaries, successors, heirs, beneficiaries, assigns, affiliated companies and agents, hereby releases and covenants not to assert any claim of patent infringement under 35 U.S.C. § 271 (including but not limited to direct infringement, contributory infringement, and inducing infringement) against Witness Systems, Inc., together with its directors, officers, parents, subsidiaries,

AO 72A
(Rev.8/82)

customers, resellers, partners, affiliated companies and joint ventures, as well as Witness Systems' heirs, permitted assigns, and successors, for U.S. Patent No.6,122,665 ("the '665 Patent"). This release and covenant applies to any and all claims, demands, liabilities, actions or causes of action of any kind which STS has had or has now or may in the future have, and operates with respect to any and all versions of any and all Witness Systems products, including but not limited to Contact Store for IP, Contact Store Business Edition, Contract Store Enterprise Edition, Witness Contact Store for Communication Manager, Witness Quality for Communication Manager, Impact 360, Nortel Contact Recording, the Nortel Quality Monitoring Suite and the Witness eQuality Suite, which includes eQuality Contact Store for IP, eQuality Contact Store Express, and eQuality Contact Store.

This release and covenant applies only to the '665 Patent and does not apply to any patent that may arise from a continuation or continuation-in-part application of the '665 Patent including, but not limited to U.S. Patent Nos. 6,865,604; 6,880,004; 6,871,229.

(Notice of Covenant Not to Sue [151-1].)  STS contends that this supplemental covenant divests the Court of jurisdiction to consider all claims related to the '665 patent because the covenant has "extinguished the controversy with respect to Witness [Systems'] infringement, and the covenant removes any apprehension . . . that [Witness Systems'] activities could subject it to suit for infringement of the '665 patent."  (Mot. to Dismiss [105] at 4.)

Witness Systems objected to the supplemental covenant on the grounds that it expressly excepted continuations and continuations-in-part of the '665

4

patent and proposed the following release language:

> This release and covenant covers all claims of the '665 patent and any claim in any reissued or reexamined version of the '665 patent, or any continuation, continuation in part or divisional of the '665 patent, that is the same or substantially identical to any current claim of the '665 patent.

(Letter to Judge Story in Response to STS' 11/9/05 Letter to Court re Covenant Not to Sue [164] at 2. [hereinafter Witness Letter Brief].)  This proposed language was rejected by STS, and in light of that rejection, Witness Systems maintains that the supplemental covenant is insufficient to divest this Court of jurisdiction over its declaratory judgment claims.  (Id.)

Witness Systems' only point of contention with the supplemental covenant, and thus the only basis for its opposition to dismissal, relates to STS's failure to include language which would release Witness Systems from liability for any infringement of any claim in a continuation patent that is "the same or substantially identical to any current claim in the '665 patent."  Witness Systems contends that for a covenant not to sue to divest the court of jurisdiction, it must "forever estop" STS from asserting the claims of the '665 patent in an action for infringement.  In this regard, Witness Systems argues that any claims in a reissued patent that are legally identical to those of

5

the '665 patent would constitute a continuation of the original patent under 35

U.S.C. § 252 and have effect continuously from the date of the original patent.

Therefore, if STS were to surrender the '665 patent to the United States Patent

& Trademark Office for reissue proceedings, and if that patent were to reissue

with claims identical or substantially identical to the current claims, then Witness

Systems would remain susceptible to liability under the terms of the covenant

and that liability would accrue from the effective date of the '665 patent.  As

such, Witness Systems argues that an actual controversy remains.

## A.  Analysis

### 1.  The "actual controversy" jurisdictional requirement

The Declaratory Judgment Act, 28 U.S.C. § 2201, enables a person who

is reasonably at legal risk because of an unresolved dispute to obtain judicial

resolution of that dispute without having to await commencement of legal action

by the other side.  BP Chem. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977

(Fed. Cir. 1993).  The Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court
> of the United States, upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any interested party
> seeking such declaration, whether or not further relief is or could be
> sought. Any such declaration shall have the force and effect of a final

judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).   As the text of the Act makes clear, "a district court has

jurisdiction over a declaratory judgment action only when there is an actual

controversy."  Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855

(Fed. Cir. 1999);  Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d

1054, 1058 (Fed. Cir. 1995) ("The existence of a sufficiently concrete dispute

between the parties [is] a jurisdictional predicate to the vitality of such an

action.").  The actual controversy must be extant at all stages of the litigation,

and not merely at the time the complaint is filed.  Preiser v. Newkirk, 422 U.S.

395, 401, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975).

"In general, the presence of an 'actual controversy' within the meaning of

the [Declaratory Judgment Act] depends on 'whether the facts alleged, under all

the circumstances, show . . . a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment.' " EMC Corp. v. Norand Corp., 89 F.3d

807, 810 (Fed. Cir. 1996) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312

U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).  "The long established rule

of law is that a declaratory judgment plaintiff must establish an actual

7

controversy on the totality of the circumstances." Spectronics Corp. v. H.B.

Fuller Co., 940 F.2d 631, 634 (Fed. Cir. 1991), abrogated on other grounds by

Cardinal Chem. Co. v. Morton Int'l, 508 U.S. 83, 95, 113 S. Ct. 1967, 124 L.

Ed. 2d 1 (1993).  Because courts test the presence vel non of an actual

controversy by reference to the facts of each case, generally applicable rules are

few.  Super Sack, 57 F.3d at 1058; see also BP Chems., 4 F.3d at 978 ("There

is no simple rule that addresses all shades of relationships between disputants.")

In the context of declarations of patent rights and liabilities, the Federal

Circuit has articulated a two-part test for determining whether a justiciable

controversy exists:

> There must be both (1) an explicit threat or other action by the
> patentee, which creates a reasonable apprehension on the part of the
> declaratory plaintiff that it will face an infringement suit, and (2)
> present activity which could constitute infringement or concrete steps
> taken with the intent to conduct such activity.

Super Sack, 57 F.3d at 1058 (quoting BP Chems., 4 F.3d at 977).  "The

element of threat or reasonable apprehension turns on the conduct of the

patentee, while the infringement element depends on the conduct of the asserted

infringer."  BP Chems., 4 F.3d at 978.  The purpose of the two-part test is to

determine whether the need for judicial attention is real and immediate or is prospective and uncertain of occurrence.  Id.

Finally, even if a case satisfies the actual controversy requirement, "the district court is not required to exercise declaratory judgment jurisdiction, but has substantial discretion to decline that jurisdiction." Teva Pharms. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1331 (Fed. Cir. 2005).  "The court must make a reasoned judgment whether the investment of time and resources will be worthwhile." Serco Svcs. Co., v. Kelley Co., 51 F.3d 1037, 1039 (Fed. Cir. 1995).  The exercise of the court's discretion, however, is not unfettered.  Id. "An abuse of discretion may occur when the trial court's decision was based on an incorrect conclusion of law or clearly erroneous findings of fact, was devoid of any evidence in the record upon which the court rationally could have based its decision, or was clearly unreasonable or arbitrary." Id. (quoting Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 936 (Fed. Cir. 1993)).

2.  Effect of the supplemental covenant and the possibility of patent reissue

STS has executed a covenant not to sue Witness Systems on the '665 patent.  Under well-established Federal Circuit precedent, "a patentee defending

against an action for a declaratory judgment of invalidity can divest the trial

court of jurisdiction over the case by filing a covenant not to assert the patent at

issue against the putative infringer. . . ."  Super Sack, 57 F.3d at 1058.  The

filing of a sufficient covenant not to sue  eliminates any "actual controversy,"

and thus declaratory judgment jurisdiction, because the covenant removes any

reasonable apprehension on the part of the alleged infringer that it will face

liability for infringement of the patent claims.  See Fina Research, S.A. v. Baroid

Ltd., 141 F.3d 1479, 1484-85 (Fed. Cir. 1998).  This rule applies with equal

force "even when a reissue application covering the same claimed subject matter

is then pending."  Super Sack, 57 F.3d at 1058.

     The supplemental covenant in this case, however, applies only to the '665

patent and expressly reserves the right to bring an action for infringement of any

patent that is a continuation or continuation-in-part of the '665 patent.  The

question then is whether, in light of that reservation of rights, the supplemental

covenant is sufficient to divest the Court of its declaratory judgment jurisdiction

by removing any reasonable apprehension of suit.  Witness Systems contends

that it is not.  According to Witness Systems, it faces potential liability for its

present activities on the claims of the '665 patent, which may be reasserted in

10

future actions if STS submits the '665 patent for reexamination or reissue and

the reexamined or reissued patent contains identical or substantially identical

claims.

The legal effect of a reissued patent is governed by 35 U.S.C. § 252.

That section provides:

> The surrender of the original patent shall take effect upon the issue of
> the reissued patent, and every reissued patent shall have the same
> effect and operation in law, on the trial of actions for causes thereafter
> arising, as if the same had been originally granted in such amended
> form, but insofar as the claims or the original and reissued patents are
> identical, such surrender shall not affect any action then pending nor
> abate any cause then existing and the reissued patent to the extent that
> its claims are identical with the original patent, shall constitute a
> continuation thereof and have effect continuously from the date of the
> original patent.

Thus, the holder of a reissued patent is entitled to infringement damages for the

period between the issue date of the original claims and the issue date of the

reissued claims if the original and reissued claims are "identical." See 35 U.S.C.

§ 252; Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1347 (Fed. Cir. 1998).

Reissued claims are "identical" to their original counterparts if they are "without

substantive change." Id.; Seattle Box Co. v. Industrial Crating & Packing, 731

F.2d 818, 827-28 (Fed. Cir. 1984).  In determining whether substantive changes

11

have been made, courts must look to whether the scope of the claims are

identical and not merely whether different words are used.  Laitram, 163 F.3d at

1347.  Witness Systems is therefore correct in that if STS were to submit the

'665 patent for reexamination and reissue, and the patent were to reissue with

identical or substantially identical claims, then under the terms of the

supplemental covenant, Witness Systems would face possible liability from the

effective date of the '665 patent.  As such, the Court is confronted with the

question of whether, in light of the language of the supplemental covenant and

considering the totality of the circumstances, Witness Systems has a reasonable

apprehension of suit on the claims of the '665 patent.

In cases involving potential liability for infringement of reissued patents,

the Federal Circuit has distinguished between possible liability on new claims

contained in the reissued patent and possible liability on the claims of the patent

submitted for reissue.  Where a party facing possible future liability seeks a

declaratory judgment with respect to the former, there can be no doubt that

jurisdiction over the action is lacking. See, e.g., Spectronics, 940 F.2d at 633

(stating that fear of liability for infringement of new claims in a reissue patent is

insufficient to create an objectively reasonable apprehension of suit on the part

of putative infringer).  First, it is well-established that the mere possibility that a

party may face potential liability on a reissued patent is, in and of itself, generally

insufficient to support the exercise of declaratory judgment jurisdiction.  See

Amana, 172 F.3d at 856 ("[T]he future existence of a reissue patent is wholly

speculative and, therefore, cannot create a case or controversy."); Spectronics,

940 F.2d at 636 (noting that there is no guarantee that the reissue patent will

eventually issue); State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1236

(Fed. Cir. 1985) (the ultimate fate and legal effect of a pending patent application

is inherently uncertain).  Second, because the claims of the patent are the central

focus of any patent infringement action, Schoell v. Regal Marine Indus., Inc.,

247 F.3d 1202, 1207 (Fed. Cir. 2001) ("An infringement analysis requires . . . a

comparison of the properly construed claims with the allegedly infringing device

or method to determine whether the device or method embodies every limitation

of the claims."), in the absence of reissued patent claims, there is nothing by

which infringement can be measured.  Spectronics, 940 F.2d at 636.

  But, where the declaratory judgment plaintiff asserts that it faces possible

liability on the claims of the present patent upon reissue, the existence of

declaratory judgment jurisdiction is dependent upon whether the patentee

remains free to assert the present claims against the putative infringer.  For

example, in <u>Spectronics Corp. v. H.B. Fuller Co., Inc.</u>, 940 F.2d 631 (Fed. Cir.

1991), the patentee filed a covenant not to sue in which it both acknowledged

that it had filed a reissue application covering the patent in issue and expressly

stated that the declaratory judgment plaintiff had no liability to defendants or any

successors in interest for infringement of the claims contained in the patent in

suit.[1]  <u>Id.</u> at 633.  The scope and effect of the covenant was clarified by the

patentee on two occasions.  First, its counsel represented to the court that, in

view of the covenant not to sue, the claims of the patent in suit could never be

enforced against the declaratory judgment plaintiff.  <u>Id.</u> at 636.  Second, in a

letter to the alleged infringer, the patentee reiterated that "[it] has clearly and

---

[1] The covenant not to sue provided:

> Defendant, H.B. Fuller Company, Inc., has filed a reissue application to reissue U.S. Patent No. 4,758,366 cancelling claims 1-18 and seeking new claims.

> Spectronics has no liability to Defendants or any successors-in-interest to U.S. Patent No. 4,758,366 for infringement of claims 1-18 of U.S. Patent No. 4,758,366, and Defendants and any successors-in-interest to U.S. Patent No. 4,758,366 will not sue Spectronics for infringement of claims 1-18 of U.S. Patent No. 4,758,366.

14

unequivocally stated that there is no liability . . . for infringement of the claims that are presently in the patent," but also indicated that "[i]f new claims emerge from the reissue [proceeding], and if there is an issue of infringement by Spectronics, and if there is subsequent litigation," the alleged infringer would be free to raise a specified defense.  Id.

Despite the covenant, representations of counsel, and the letter, the declaratory judgment plaintiff contended that possible liability on identical claims in the reissue patent was sufficient to sustain the district court's jurisdiction.  In rejecting this argument and concluding that no actual controversy existed, the Federal Circuit explained:

> Beneath Spectronics' contention appears to lie the argument that it could be held liable for its current allegedly infringing activity if any of the reissue claims are "identical" to the original claims within the meaning of § 252. However, § 252 also provides that identical reissue claims "shall constitute a continuation" of the original claims, and that surrender of the original claims upon reissuance of identical claims "shall not affect any action then pending nor abate any cause of action then existing." In the instant case, Fuller asserted in the statement of non liability that Spectronics "has no liability to [Fuller] for infringement of claims 1-18 of [the '366 patent]," and unequivocally reiterated in its letter accompanying the statement that "there is no liability by Spectronics for infringement" of those claims.  In addition, Fuller "released Spectronics from any liability with respect to the claims of the '366 patent. This includes past products, current products or products contemplated in the future. Because

15

Spectronics has been absolved from liability on all the claims of the '366 patent, there will be no future confrontation with respect to them." Brief for Appellees at 28, Spectronics Corp. v. H.B. Fuller Co., No. 91-1041 (Fed. Cir. filed Feb. 7, 1991).

Although Spectronics may have some cause to fear a suit for future infringement of substantively non-identical claims after reissue, it has no cause for concern that it can be held liable for practicing the invention claimed in the '366 patent. As to that invention, Fuller is estopped by its statement of non liability, on its face and as explained by Fuller, from asserting liability for the making, selling or using of any Spectronics' product that would infringe the claims of the '366 patent.

Id. at 637-38.

For the same reason that the Federal Circuit found that the covenant not to sue divested the district court of jurisdiction in Spectronics, the Court concludes that an actual controversy remains in this case. Whereas in Spectronics, § 252 operated to eliminate any fear that the declaratory judgment plaintiff would face liability on the claims of the patent in suit, in this case, STS has availed itself of § 252 to provide itself with a narrow, but no less viable, means of asserting the very claims of the '665 patent against Witness Systems in a future action. Therefore, the Court cannot conclude that STS is "forever estopped" from asserting the claims of the '665 patent against Witness Systems, and as such, jurisdiction may remain. See Id.; Super Sack, 57 F.3d at 1058-60

16

(promise not to sue the declaratory judgment plaintiff over "products [it] currently manufactured and sold" was sufficient to divest the district court of jurisdiction because the patentee was "forever estopped" from suing the declaratory judgment plaintiff over its current activities).

In this case, STS, after multiple revisions, has chosen the language of its supplemental covenant carefully.  STS could have extended the protections of the supplemental covenant to any patent resulting from the reexamination or reissue of the '665 patent which contains claims substantively identical to the original '665 patent claims.  Without question, such a covenant would be sufficient to divest this Court of jurisdiction.  But, this it did not do.  Rather, STS expressly reserved, through the niceties of patent law and careful draftsmanship, the right to assert the very claims of the '665 patent in a future action.  See 35 U.S.C. § 252 (stating that a reissued patent with claims that are identical to the original patent, "shall constitute a continuation thereof").  Furthermore, "when original claims are reissued without substantive change, they are generally enforceable from the original date of the patent."  Spectronics, 940 F.2d at 637; see also 35 U.S.C. § 252 ("[T]he reissued patent to the extent that its claims are identical with the original patent, shall constitute a continuation

17

thereof and have effect continuously from the date of the original patent."). Thus, if Witness Systems were denied the opportunity to litigate the validity of the claims of the '665 patent through dismissal of its declaratory judgment action, and the '665 patent were reissued with substantively similar claims, Witness Systems would face potential liability for its present activities and would have potentially incurred additional, and possibly substantial, liability between the dismissal of its declaratory judgment action and the assertion of infringement in the new suit.  Quite simply, "one who may become liable for infringement should not be subject to manipulation by a patentee who uses careful phrases in order to . . . deny recourse to the courts while damages accrue."  Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1053 (Fed. Cir. 1995).

Furthermore, the concerns of the Federal Circuit with respect to the inability to measure infringement are less pronounced, where as here, the only concern of the allegedly infringing party relates to the future reissue of the patent with legally identical claims.  As explained above, the declaratory judgment plaintiff faces potential liability for present activities only where the claims of the reissued patent are legally identical and of equal scope to those of the original

18

patent.  Therefore, an infringement analysis comparing the properly construed

claims of the existing patent with the allegedly infringing product or products

would apply with equal force to any legally identical claims contained in the

reissued patent.

Finally, the Court must address one final point.  At present, there is no

evidence in the record to indicate that STS has submitted the '665 patent for

reexamination and reissue.  This alone, however, is not dispositive as to Witness

Systems' reasonable apprehension of suit.  The Court is cognizant that neither

the mere existence of an adverse patent nor a history of litigation between the

parties, in and of itself, is sufficient to create a reasonable apprehension of suit.

BP Chems., 4 F.3d at 978 ("for an actual controversy more is required than the

existence of an adversely held patent"); see also In re Laitram Mach., Inc., 52

F.3d 343 (Fed. Cir. 1995) (unpublished decision); Int'l Harvester Co. v. Deere

& Co., 623 F.2d 1207 (7th Cir. 1980).  But, a history of litigation is not

irrelevant and may be sufficient to create a reasonable apprehension of suit

where, as here, there is ongoing litigation between the parties over a series of

closely related patents involving the same technology.  Apotex, Inc. v. Pfizer

Inc., 385 F. Supp. 2d 187, 194 (S.D.N.Y. 2005); see Goodyear Tire & Rubber

Co. v. Releasomers, Inc., 824 F.2d 953 (Fed. Cir. 1987) (finding declaratory

judgment jurisdiction proper and noting that "these parties are themselves

currently embroiled in a protracted dispute in state court over the commercial

technology generally covered by the patents" in suit); c.f. Teva Pharms. USA,

Inc. v. Abbott Labs., 301 F. Supp. 2d 819, 825 (N.D. Ill. 2004) (finding that

three prior patent infringement suits relating to production and marketing of

other generic drugs supported declaratory judgment plaintiff's reasonable

apprehension of suit with respect to new drug).

In this case, the parties are direct and primary competitors in the industry.

Each has been embroiled in highly contentious, ongoing patent litigation

involving the same technology and closely related patents.  Moreover, this

litigation was initiated by STS when it filed suit against Witness Systems for

infringement of the '665 patent.  Finally, during the course of this litigation both

parties have evinced a willingness to seize on any ambiguity or technicality and

use it to their advantage, and as such, the Court has every reason to believe that

the existence of a narrow loophole in STS's supplemental covenant not to sue

did not occur by mere happenstance.  On these facts, the Court concludes that

the parties' relationship, their history of litigation, and the proven willingness of

STS to bring an infringement action against Witness Systems on the '665 and related patents all militate in favor of concluding that Witness Systems maintains a reasonable apprehension of suit on the claims of the '665 patent.

In light of the foregoing, the Court concludes that, on the narrow facts of this case, the supplemental covenant is insufficient to eliminate any reasonable apprehension of suit on the part of Witness Systems.  As such, Plaintiff's Motion to Dismiss is hereby denied.

## II.  Plaintiff's Motion for Contempt and for Sanctions

A review of the facts of this case relevant to the STS motion makes clear that neither party is without fault.  First, Witness Systems without question failed to adequately provide discovery which had been ordered by this Court. Specifically, the Court finds that Witness Systems failed to timely provide financial, sales, and marketing information as was required by this Court's Order of September 26, 2005, and reiterated in its verbal order of October 6, 2005.  While the Court need not address each and every deficiency, as an example, the Court points to Witness Systems' November 1, 2005 production of previously redacted documents.  Witness Systems had previously provided STS with redacted versions of the same documents on May 20, 2005.

21

Therefore, these documents were clearly in the possession of Witness Systems at the time the Court ordered production and there is no reason that they should not have been quickly produced upon the entry of the Court's September 26, 2005 Order.  As STS correctly notes, the decision to provide discovery ordered by the Court should not require the prompting of a motion  for contempt, and in this regard, Witness Systems has clearly failed.

But, it is also clear that STS has overreached in bringing this motion, and in so doing, forced Witness Systems to incur needless expense.  STS contends that Witness Systems should be held in contempt for its failure to provide not only a searchable copy of the source code, but also searchable copies of source code-related documents.  STS argues that this production constitutes a deliberate effort to hinder the retrieval of information in these documents and thwarts "the clear purpose and intent of the Court's Order requiring that source code be provided in searchable form."  (Reply in Supp. of Mot. for Contempt [173] at 2.)

The Court's Order of October 7, 2005 stated that Witness Systems was "ordered to produce the laptop complete with a searchable version of Defendant's source code and deliver the same to the New York office of Plaintiff's counsel

within five (5) days from the date of this Order."  As the Order was dated October 7, 2005, the deadline for producing the laptop containing a searchable version of the source code was October 12, 2005.  Witness Systems has clearly complied with this aspect of the Court's Order.  Moreover, and despite Plaintiff's contention to the contrary, nothing in the Court's October 7, 2005 Order required that any source code-related documents provided along with the source code be in searchable form.

To the extent that STS takes issue with the classification of the documents as "Highly Sensitive -- Source Code" under the Protective Order, the Court recognizes that under the terms of that Order, the improper designation of documents may significantly impede access to the information they contain.  Were a party found to be exploiting the protections of the Court's Order to impede discovery, the Court would not hesitate to impose appropriate sanctions.  But, as that issue is not properly before the Court, it declines to impose sanctions or award costs on this basis.

In light of the fact that both parties bear some responsibility for this discovery dispute, each shall bear its own costs with respect to the bringing of, and responding to, this motion.  That said, the Court fully expects that the

AO 72A
(Rev.8/82)

parties will, from this point forward, conduct discovery in this case in strict compliance with Orders of this Court, the Federal Rules of Civil Procedure, and the Local Rules of the Northern District of Georgia.  The failure of either party to do so will result in the imposition of such sanctions as the Court in its discretion deems appropriate.

## III.  Defendant's Motion for Modification of Patent LR Schedule

As a preliminary matter, Plaintiff's Motion to file Surreply Declarations [180] vis-a-vis this motion is granted.

Defendant seeks modification of the Patent Local Rule schedule for claim construction proceedings.  Specifically, Defendant asks this Court to delay the exchange of disputed claim terms under Patent LR 6.1 until 30 days after the depositions of Mr. Bar and Dr. Friedman have been completed and both parties have received English language transcripts of the testimony of both individuals, with subsequent claim construction proceedings to follow on the schedule set by the Patent Local Rules.  (Supplemental Mem. in Supp. of Mot. for Mod. of Patent LR Sched. [182] at 2-3.)  STS opposes this Motion and contends that the request for modification is dilatory in purpose; that the testimony of these inventors is minimally relevant to the issue of claim construction; that preliminary

constructions provided pursuant to Rule 6.2 may, in any event, be supplemented as additional evidence is obtained; and that such evidence would not even arguably be needed until the filing of the Rule 6.3 Joint Claim Construction Statement.

As Witness Systems correctly notes, this case has been anything but a model of the discovery and claim construction envisioned by the Patent Local Rules.  As evidenced by Plaintiff's Motion for Contempt and the multiple motions to compel which have been filed in this case, it has been plagued from the outset with delay and contentious discovery disputes.  Nevertheless, the Court endeavors to return this case to a schedule calculated to result in the fair and expeditious resolution of this dispute.  Therefore, the Court declines to extend the time for Local Patent Rule exchanges any further.

The Court recognizes the possibility that the depositions of Mr. Bar and Mr. Friedman, inventors of the patents in issue, may provide some evidence relevant to the claim construction phase of this litigation.  On December 5, 2005, Witness Systems obtained a partial deposition from Mr. Bar.  Certainly, the deposition was not as productive as it could have been.  Moreover, the failure to obtain deposition testimony from Mr. Friedman is indeed unfortunate.  But, at

25

present, substantial uncertainty exists as to when, if ever, either deposition will be completed.  Having initiated the process of securing their testimony under the Hague Convention approximately five months before either deposition was actually scheduled, the Court is not inclined to place this litigation on hold in order to repeat that process.  Furthermore, because additional inventor testimony does not appear essential to claim construction in this case, the Court concludes that the prejudice to Witness Systems caused by proceeding with claim construction in the absence of that testimony, if any, will be minimal.

In light of the foregoing, Defendant's motion is granted insofar as Witness Systems is not in default by failing to comply with the Local Patent Rule exchange procedures.  That said, the Court concludes that the exchange of proposed terms under Local Patent Rule 6.1 as to each patent in issue in this case shall occur no later than twenty (20) days from the entry of this Order.  All subsequent dates for exchanges shall be fixed according to the Local Patent Rules.  Witness Systems shall be required to comply with the disclosure requirements of Local Patent Rule 6.2(b) with respect to relevant information in its possession.  Witness Systems shall, however, have the opportunity to

supplement its Rule 6.2(b) disclosures in the event additional pertinent

information becomes available.

## IV.  Defendant's Motion to Compel

Witness Systems seeks to compel the production of "documents and

information from STS concerning financial, technical, and marketing aspects of

the products that embody the claims of the patents-in-suit and/or are marked

with the patents-in-suit."  (Mem. in Supp. of Mot. to Compel [179] at 1.)

Witness Systems contends that this information is relevant to the validity of the

patents-in-suit, including the obviousness, enablement, and best mode defenses;

claim construction; and the range of equivalents to which the patents may be

entitled.  (Id. at 2.)  STS disputes that Witness Systems is entitled to production

of these documents on three grounds: (1) STS lacks the requisite control over

documents in the possession of its parent and sister corporations, NICE

Systems, Ltd. and NICE Systems, Inc.; (2) NICE products are not relevant to

any issue in the case; and (3) the production of NICE documents would unduly

burden STS.  The Court addresses each in turn.

### 1.  Control over the requested documents and information

A party "may serve on any other party a request (1) to produce and

permit the party making the request, or someone acting on the requestor's

behalf, to inspect and copy, any designated documents . . . which constitute or

contain matters within the scope of Rule 26(b) and which are in the possession,

custody or control of the party upon whom the request is served. . . ." FED. R.

CIV. P. 34.  The Eleventh Circuit has stated that "[c]ontrol is defined not only as

possession, but as the legal right to obtain the documents requested upon

demand."  Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984).  Rule 34

disclosures involving parent and subsidiary corporations present unique

challenges, however, and in this context "[c]ontrol has been construed broadly

by the courts as the legal right, authority, or practical ability to obtain the

materials sought upon demand."  S.E.C. v. Credit Bancorp, Ltd., 194 F.R.D.

469, 471 (S.D.N.Y. 2000); Camden Iron & Metal, Inc. v. Marubeni Am. Corp.,

138 F.R.D. 438, 441 (D.N.J. 1991) ("Federal courts construe 'control' very

broadly under Rule 34.").  The party seeking production bears the burden of

establishing the requisite control.  See, e.g., United States  v. Int'l Union of

Petroleum & Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989);

Camden Iron & Metal, Inc., 138 F.R.D. at 441.

Where the documents sought to be produced in a case involving a subsidiary corporation are in the possession of its parent, "the determination of control turns upon whether the [inter]corporate relationship establishes some legal right, authority or ability to obtain the requested documents on demand. Evidence considered by the courts includes the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operated as one, demonstrated access to documents in the ordinary course of business, and an agency relationship." Camden Iron & Metal, 138 F.R.D. at 442 (D.N.J. 1991); see also Gerling Intern. Ins. Co. v. C.I.R., 839 F.2d 131, 140-41 (3d Cir. 1988) (noting that control over documents in the possession of a parent corporation has been held to be appropriate where (1) the alter ego doctrine warranted "piercing the corporate veil"; (2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit; (3) the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation; (4) there is access to documents when the need arises in the ordinary course of business; and (5) the subsidiary was the marketer and servicer of parent's product in the United States).

In this case, the relationship between STS and NICE Systems, Ltd. ("NICE, Ltd.") and NICE Systems, Inc. ("NICE, Inc.") is extraordinarily close. Although each is a separate corporate entity, both STS and NICE, Inc. are wholly-owned subsidiaries of NICE, Ltd.  NICE, Inc. markets, sells, and provides customer support for NICE, Ltd.'s products in the United States. STS has ceased all commercial activity, taken inactive status, and exists solely to hold the patents involved in this litigation.  Its Board of Directors is comprised entirely of officers and directors of NICE, Ltd.  STS neither makes, sells or offers for sale any product covered by its patents.  Rather, all products are manufactured and sold by NICE, Ltd. or its subsidiary NICE, Inc.  It appears that the applications which gave rise to U.S. Patent Nos. 6,865,604, 6,880,004, and 6,871,229 which STS alleges have been infringed by Witness Systems were, in fact, prosecuted by NICE, Ltd. and assigned to STS during the pendency of this litigation.  Furthermore, NICE, Ltd. has been actively involved in this litigation.  On December 5, 2005, Witness Systems deposed one of the inventors of the '665 patent in Israel under the Hague Convention. During his deposition, he was represented by the same firm that oversaw prosecution of the patents in suit on behalf of NICE, Ltd.  Although counsel has

stated that his firm does not represent either NICE or STS, it appears that

counsel contacted the inventor unsolicited and provided representation free of

charge.  No credible explanation for the unsolicited, uncompensated

involvement of NICE patent counsel in depositions in this case has been

offered.  Additionally, it appears that, in preparing for his deposition, Mr. Bar

was in contact with a Motti Cory, the Director of Intellectual Property for NICE,

who despite apparently having no official relationship to STS, has executed

verifications of interrogatory responses both on behalf of STS in this case, and

on behalf of NICE in ongoing parallel litigation.

The Court finds that the intercorporate relationship between STS and the

NICE entities establishes a legal right, authority or ability to obtain the requested

documents on demand.  The Court has no doubt that STS could secure the

documents in question from either NICE, Ltd. or NICE, Inc. if the need arose in

the ordinary course of business or if production were perceived to be beneficial

to STS in this litigation.  In such circumstances, to allow either STS or the

related NICE entitles to thwart their obligations to provide relevant discovery

merely through the assignment of patent rights to a shell entity, all the while

initiating and maintaining control over the litigation involving those patents, is

contrary not only to the purpose and intent  of the Federal Rules of Civil

Procedure and their broad discovery provisions, but also to basic notions of

fairness and justice.  Therefore, the Court concludes that STS exercises control

over documents in the possession of NICE Systems, Ltd. and NICE Systems,

Inc. within the meaning of Rule 34, and as such, the documents and information

requested, if relevant, must be produced.

2.  Relevance

Federal Rule of Civil Procedure 26 governs the scope and limits of

discovery in civil actions.  In pertinent part, Rule 26 provides: "Parties may

obtain discovery regarding any matter, not privileged, that is relevant to the claim

or defense of any party. . . .   Relevant information need not be admissible at the

trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence."  FED. R. CIV. P. 26(b)(1).  Although the scope of

discovery under the Federal Rules has generally been construed broadly, see,

e.g., Schlagenhauf v. Holder, 379 U.S. 104, 114-115 (1964) (discovery rules are

to be accorded a broad and liberal treatment to effect their purpose of

adequately informing the litigants in civil trials), it is not unlimited.  Oppenheimer

Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) ("[D]iscovery, like all matters

32

of procedure, has ultimate and necessary boundaries.") (quoting <u>Hickman v.</u>

<u>Taylor</u>, 329 U.S. 495, 507 (1947)).  For instance, Rule 26 requires that

otherwise permissible discovery be limited in circumstances where the court

concludes that "the discovery sought is unreasonably cumulative or duplicative,

or is obtainable from some other source that is more convenient, less

burdensome, or less expensive[,]" or that "the burden or expense of the

proposed discovery outweighs its likely benefit . . . ." FED. R. CIV. P.

26(b)(2)(I) & (iii).

Witness Systems asserts that the requested documents and information

are relevant to the issues of obviousness, enablement, best mode defenses,

claim construction, and the application of the doctrine of equivalents.  STS

disputes each of these contentions.

a.  Obviousness

Under 35 U.S.C. § 103, a patent is invalid "if the differences between the

claimed subject matter sought to be patented and the prior art are such that the

subject matter as a whole would have been obvious at the time the invention was

made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).

Obviousness is evaluated in light of four factual determinations: "(1) the scope

33

and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) objective indicia of nonobviousness." Merck & Co. v. Teva Pharms USA, 395 F.3d 1364, 1369 (Fed. Cir. 2005).  Where a party challenging the validity of a patent makes a prima facie showing of obviousness, the patentee may rebut this showing with objective evidence of nonobviousness. See WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1359 (Fed. Cir. 1999).  Objective evidence of nonobviousness may include "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., [which] might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." Graham v. John Deere Co.., 383 U.S. 1, 17-18, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966).

Where a patentee asserts that commercial success supports its claim of nonobviousness, the patentee must establish that a sufficient nexus exists between the merits of the claimed invention and the evidence of commercial success.  Iron Grip Barbell Co. v. USA Sports, Inc., 392 F.3d 1317, 1324 (Fed. Cir. 2004). "[I]f the marketed product embodies the claimed features, and is coextensive with them, then a nexus is presumed and the burden shifts to the

party asserting obviousness to present evidence to rebut the presumed nexus. The presumed nexus cannot be rebutted with mere argument; evidence must be put forth." Brown & Williamson Tobacco Corp. v. Philip Morris, Inc., 229 F.3d 1120, 1130 (Fed. Cir. 2000) (citations omitted).  In rebutting the nexus between the claimed invention and commercial success, the challenging party may come forward with evidence tending to show that the commercial success is due to factors extraneous to the patented invention, such as advertising, packaging, superior workmanship, or market share.  Id.; J.T. Eaton & Co. v. Atl. Paste & Glue Co., 106 F.3d 1563, 1571 (Fed. Cir. 1997).

In this case, Witness Systems asserts that the patents in issue are invalid on obviousness grounds.  STS has represented that it will attempt to rebut any showing of obviousness by relying solely on the commercial success of Witness Systems products.  In light of its express intent to limit commercial success evidence to Witness Systems products, STS argues that documents and information relevant to the commercial success, or lack thereof, of other products embodying the inventions disclosed in the STS patents is not discoverable.  Witness Systems disputes this contention and argues that it is entitled to documents and information reasonably calculated to lead to the

discovery of admissible evidence concerning the lack of any asserted nexus between the asserted commercial success and claimed invention.  According to Witness Systems, such evidence would include financial data showing the relative success or failure of products produced by NICE which embody the claims of the STS patents, technical information sufficient to establish the extent to which those products embody the claims at issue, and marketing information showing how those products were marketed and promoted.

The Court concludes that Witness Systems is entitled to the discovery  of financial, technical, and marketing aspects of products produced by NICE Systems, Ltd. and sold in the United States by NICE Systems, Inc. that embody the claims of the patents-in-suit.  The Federal Circuit has made clear that in "determining the question of obviousness, inquiry should always be made into whatever objective evidence of nonobviousness there may be." Iron Grip, 392 F.3d at 1323 (quoting Vandenberg v. Dairy Equip. Co., 740 F.2d 1560, 1567 (Fed. Cir. 1984)).  The commercial success of products embodying the patented invention, whether produced by the infringer, the patentee, or as in this case, an entity closely related to the patentee, may be relevant to the issue of obviousness.  See Brown & Williamson, 229 F.3d at 1130; Gambro Lundia AB

v. Baxter Healthcare Corp., 110 F.3d 1573, 1579 (Fed. Cir. 1997).  Simply put,

where NICE products embody the claims of the STS patents, STS may not

unilaterally limit discovery as to the commercial success of those products by

merely "electing" to rely on the commercial success of the infringer's products.

If STS seeks to establish that its patented invention is nonobvious by

introduction of commercial success evidence, then Witness Systems is entitled

to the discovery it needs to meet that commercial success evidence by showing

that the success is due to some factor other than the patented invention.

Therefore, Witness Systems is entitled to discovery of financial, technical, and

marketing aspects of products produced by NICE Systems, Ltd. and sold in the

United States by NICE Systems, Inc. that embody the claims of the patents-in-

suit.

STS makes much of the party/non-party distinction and argues that the

case law does not support the position "that a defense of obviousness entitles

the infringer to discovery regarding (or even to rely upon) a non-party's

products to rebut the commercial success of its own products."  (Resp. in

Opp. to Mot. to Compel [160-1] at 12.)  But, contrary to STS's contention,

nothing in Brown & Williamson limits discovery on commercial success to

products "produced by the same <u>entity</u>."   Furthermore, this argument is especially unavailing when considered in light of the unique relationship between STS and the NICE entities.  As discussed above, STS, the named party in this action, is a wholly-owned, inactive holding corporation which produces no product that embodies the patents in issue.  Rather, those products are manufactured by its parent NICE Systems, Ltd., and marketed and sold by NICE Systems, Inc.  The NICE products may represent the most relevant embodiment of the STS patents and their success or failure is relevant to issues of obviousness.  Therefore, the Court has little difficulty concluding that, consistent with the broad discovery envisioned by the Federal Rules, Witness Systems is entitled to discovery relevant to the commercial success of NICE products.[2]

### 3.  The burden on STS

In a case such as this, where tens of thousands of documents have already been produced, the Court finds little merit in STS's assertion that production of the documents and information sought will be unduly

---

[2] Having concluded that the broad categories of documents and information sought are discoverable as they may be relevant to the issue of nonobviousness, the Court need not address Witness Systems' contentions with respect to either best mode or enablement.

burdensome.  Similar information has been the subject of motions to compel

and for contempt filed by STS and the Court finds no reason to relieve STS of

its obligation to provide relevant discovery in this case.

### 4.  Specific discovery requests

Local Rule 37.1 provides:

A. Form. A motion to compel a disclosure under LR 26.1 or to
compel a response to discovery conducted pursuant to the Federal
Rules of Civil Procedure shall:
(1) Include the certification of counsel with regard to the duty to
confer required by Fed.R.Civ.P. 37(a)(2)(A)(B);
(2) Quote verbatim each disclosure, interrogatory, deposition question,
request for designation of deponent, or request for inspection to which
objection is taken;
(3) State the specific objection;
(4) State the grounds assigned for the objection (if not apparent from
the objection); and
(5) Cite authority and include a discussion of the reasons assigned as
supporting the motion.

The motion shall be arranged so that the objection, grounds, authority,
and supporting reasons follow the verbatim statement of each specific
disclosure, interrogatory, deposition question, request for designation
of deponent, or request for inspection to which an objection is raised.

Witness Systems has provided the text of its requests, the STS responses

as well as argument and authority related to the general classes of materials

sought to be produced.  Witness Systems has not, however, provided any

argument or authority with respect to the specific requests raised in this motion as required by LR 37.1.  Because the specific requests at issue here have not been adequately briefed, the Court declines at this time to issue an Order as to the entitlement of Witness Systems to the specific documents and information requested.

At a hearing held on January 4, 2006, the Court stated to the parties its intention to refer remaining discovery issues to a Special Master or to a Magistrate Judge.  The parties are to provide their positions concerning such referral to the Court not later than January 13.  The Court will refer this issue for determination by either the Special Master or the Magistrate to whom the discovery issues are referred.

## V. Plaintiff's Motion for Protective Order

STS seeks a protective order precluding discovery technical, marketing, and financial information related to products manufactured and produced by STS's corporate parent, NICE Systems, Ltd., and sold in the United States by STS's sister company, NICE Systems, Inc.  For the reasons set forth in Part IV of this Order, Plaintiff's Motion for Protective Order is denied.

40

### Conclusion

Based on the foregoing, Plaintiff's Motion to Dismiss All Claims Relating to the '665 Patent for Lack of Subject Matter Jurisdiction [105] is hereby **DENIED**; Plaintiff's Motion for Protective Order [135] is hereby **DENIED**; Plaintiff's Motion for Contempt of the Court's Order of September 26, 2005 and for Sanctions [138] is hereby **DENIED**; Defendant's Motion for Modification of Patent LR Schedule [147] is hereby **GRANTED IN PART AND DENIED IN PART**; Plaintiff's Motion for Leave to file Surreply Declarations [180] is hereby **GRANTED**; and Defendant's Motion to Compel [148] is **GRANTED IN PART**. The Court refer determination on the specific discovery requests contained Defendant's Motion to Compel [148] to a Special Master or Magistrate Judge by subsequent order .

**SO ORDERED** this   6th   day of January, 2006.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE